IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KENDRICK TREVON DARROUGH, SR.　　　　　　　　　　　　　　PLAINTIFF
ADC #137735

v.　　　　　　　　　　　5:19-cv-00144-JM-JJV

JAMES BEASLEY, Corporal,
Tucker Unit, ADC; *et al.*　　　　　　　　　　　　　　　　　　　DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.　　　Why the record made before the Magistrate Judge is inadequate.

2.　　　Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

**I.     INTRODUCTION**

Kedrick Trevon Darrough, Sr. ("Plaintiff") is a prisoner in the Tucker Unit of the Arkansas Division of Correction ("ADC"). He has filed a *pro se* Amended Complaint, pursuant to 42 U.S.C. § 1983, alleging Defendants Corporal James Beasley, Corporal Dennis Coleman, Lieutenant Phillip Suell, and Sergeant Jeremy Williams failed to protect him from being attacked by another prisoner on December 11, 2018.[1]  (Doc. No. 5.)  Plaintiff brings these claims against Defendants in their official and personal capacities. (*Id*.)  He seeks monetary damages and an injunction requiring he be transferred to a prison in California. (*Id*.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to sovereign and qualified immunity. (Doc. Nos. 30, 31, 32, 37.)  Plaintiff has filed a Response. (Doc. No. 36.)  After careful consideration and for the following reasons, I recommend the Motion for Summary Judgment be GRANTED, and Plaintiff's failure to protect claims against

---

[1] All other claims and Defendants were dismissed without prejudice during screening mandated by 28 U.S.C. § 1915A. (Doc. No. 8.)

2

Defendants Beasley, Coleman, Williams, and Suell be DISMISSED with prejudice.

## II.     SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.    FACTS

The facts, viewed in the light most favorable to Plaintiff and taken mostly from his deposition and sworn declaration, are as follows. (Doc. Nos. 36 at 1-3; No. 37 at 19-36.) In December 2018, Plaintiff was housed in Barrack 3 at the Tucker Unit. (*Id.*) Barrack 3 is divided by a wall into side 3-A and 3-B. (*Id.*) Plaintiff was housed in 3-B, while inmate Travis

Humphrey was in 3-A. (*Id.*) Plaintiff says that, although it was against ADC policy, Defendants Beasley and Coleman, who worked the control booth on the night shift, would often allow Humphrey and other inmates to go into their unassigned side of Barrack 3 to visit with other inmates, get haircuts and tattoos, and use drugs. (*Id.*) Plaintiff also says Defendants Suell and Williams did not regularly perform security rounds on the night shift, and that when they did so, they often allowed inmates to stay in their unassigned side of the Barrack 3. (*Id.*) According to Plaintiff, Humphrey was known to steal things from inmates while in 3-B to support his drug habit. (*Id.*) But, he admits no one reported this to ADC officials. (*Id.*) And, the parties agree Humphrey was not on Plaintiff's enemy alert list, the two prisoners did not have any problems with each other, Plaintiff had not complained about Humphrey or any other prisoner improperly being in 3-B, and ADC officials had no record of Humphrey previously assaulting or attacking other prisoners.[2] (*Id*; Doc. Nos. 30-1; 30-2; 30-3; 30-4.)

Sometime in the evening of December 10, 2018, Defendant Beasley allowed Humphrey to enter 3-B. (Doc. Nos. 36 at 1-3; 37 at 19-36.) Around 7:00 p.m. and 11:00 p.m., Plaintiff, who was not feeling well, woke-up to use the bathroom and saw Humphrey smoking K-2 with other inmates in 3-B. (*Id.*) Plaintiff did not report the matter and went back to sleep. (*Id.*) On December 11, 2018, around 5:15 a.m., Plaintiff turned in his sleep startling Humphrey, who was rummaging through Plaintiff's locker at the foot of his bed looking for something to steal. (*Id.*) Fearing he was caught, Humphrey hit Plaintiff several times in the head with a brick in a sock. (*Id.*) Plaintiff wrestled the weapon from Humphrey just as Defendant Beasley opened the door to 3-B for chow call. (*Id.*) Inmate Humphrey then ran out of 3-B as Plaintiff gave chase.

---

[2] During his deposition, Plaintiff said Humphrey had previously "assaulted" prisoners in 3-B. (Doc. No. 37 at 42.) But, he admitted no one had reported the threats to Defendants or any other ADC officials. (*Id.*)

4

Defendant Coleman and two non-party officers stopped the prisoners. (*Id*.) Plaintiff was taken to an emergency room where several lacerations on his head were closed with staples and surgical glue. (*Id*.) He returned to the Tucker Unit later that day.[3] (*Id*.)

## IV. ARGUMENT

### A. Sovereign Immunity

Defendants argue they are entitled to sovereign immunity from Plaintiff's request for monetary damages from them in their official capacities. I agree. The doctrine of sovereign immunity, which is derived from the Eleventh Amendment, precludes the recovery of monetary damages from state officials acting in their official capacities, unless the state has waived its immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kruger v. Nebraska*, 820 F.3d 295, 301(8th Cir. 2016). Defendants are state officials, and Arkansas has not waived its Eleventh Amendment immunity. *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991). Thus, they are entitled to sovereign immunity from Plaintiff's request for monetary damages from them in their official capacities.

---

[3] Defendants' declarations and incident reports provide a different version of what happened on December 11, 2018. (Doc. Nos. 30-1; 30-2; 30-3; 30-4; 36 at 29-36.) They say that at 5:15 a.m., Defendant Corporal Beasley, who was working the control booth, opened the door to allow Humphrey and the other inmates in 3-A go to chow call. After they exited, Defendant Beasley opened the door to 3-B. At that moment, a sergeant radioed Defendant Beasley to close the door to 3-B because the chow hall was full. Before he could do so, two inmates left 3-B, and Humphrey entered 3-B. Defendant Beasley saw Humphrey do so but thought there would not be a problem because Humphrey did not appear to have a weapon, none of the prisoners in 3-B had previously complained about Humphrey, and the inmates in 3-B would be going to chow call "within a couple of a minutes." (Doc. No. 30-1 at 2.) "Approximately one minute later," Defendant Beasley heard pounding on the door to 3-B. (*Id*.) He opened the door, and Plaintiff chased Humphrey out of the 3-B and into the hallway. Defendant Beasley called for back-up. Defendants Coleman, Williams, and several non-party officers stopped the inmates, separated them, and sent Plaintiff to the infirmary.

5

### B. Qualified Immunity

Defendants also argue they are entitled to qualified immunity on the failure to protect claim Plaintiff has raised against them in their individual capacities. Qualified immunity protects government officials who acted in an objectively reasonable manner and shields them from liability when their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not fact. *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial").

Defendants are entitled to qualified immunity if: (1) the facts, *viewed in the light most favorable to Plaintiff,* do not establish a violation of his constitutional right to be protected from harm; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that reasonable officials would not have known their actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 232; *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009).

Because Plaintiff was a convicted prisoner when he was attacked, his failure to protect claim falls under the Eighth Amendment. Although prison officials have an Eighth Amendment obligation to "take reasonable measures to guarantee inmate safety," they are not liable "every time one inmate attacks another." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018); *Young*

6

*v. Selk*, 508 F.3d 868, 871-72 (8th Cir. 2007). Prison officials violate the Eighth Amendment "only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson,* 902 F.3d at 851; *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002). Thus, to defeat qualified immunity and proceed to trial on his failure to protect claim, there must be evidence that: (1) objectively, there was a substantial risk Plaintiff would be seriously harmed by Humphrey; and (2) subjectively, Defendants knew of and deliberately disregarded that substantial risk of serious harm. *See Blair v. Bowersox,* 929 F.3d 981, 987 (8th Cir. 2019); *Patterson,* 902 F.3d at 851.

Defendants argue Plaintiff cannot satisfy either element based on their version of the facts, *i.e.,* that Humphrey snuck into 3-B when the door to 3-A was opened for chow call and that he was only in there for about a minute before he attacked Plaintiff. (Doc. No. 32 at 10-12.) But, as previously explained, at this stage of the case I must construe the evidence in the *light most favorable to Plaintiff*.

Plaintiff says all four Defendants are responsible for the attack because they often allowed Humphrey and other prisoners assigned to 3-A to go into 3-B in violation of ADC policy and rules. (Doc. No. 36 at 1-6; No. 37 at 25-30, 37-41, 48-50.) He claims Defendant Beasley let Humphrey into 3-B on the day he was attacked, and Defendants Coleman, Suell, and Williams knew Humphrey was in 3-B or would have noticed he was out of place if they had properly done their security checks. (*Id*.) But, a violation of prison rules and policies is not enough, standing alone, to sustain a constitutional violation. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997). And, a § 1983 failure to protect claim cannot be premised on negligence or even gross negligence. *Patterson*, 902 F.3d at 852 (dismissing a § 1983 failure to protect claim based on a prison guard's negligent or grossly negligent failure to inspect and monitor a barrack where an attack occurred); *Tucker*, 276 F.3d at

7

1001-02 (same).

Plaintiff also says Defendants should have known that allowing inmates to enter their unassigned side of Barrack 3 could "possibly" result in a physical altercation. (Doc. No. 37 at 39-41.) But, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994); *see also Blair*, 929 F.3d at 987 (8th Cir. 2019) (the negligence "should-have-known standard is not sufficient to support a finding of deliberate indifference;" instead, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

That being said, Plaintiff's allegation that Defendants often allowed Humphrey and other prisoners to go into their unassigned side of the barracks to use drugs or engage in other activities or turned a blind eye to such conduct is definitely troublesome. And, it appears from a grievance response that ADC officials took "corrective action" against unspecified "staff" who allowed Humphrey to enter 3-B twice on December 10 and 11, 2018.[4] (Doc. No. 36 at 28.) But, the bar for defeating qualified immunity and proceeding to trial on a § 1983 constitution claim is high. Specifically, there must be some evidence Defendants were aware of and deliberately indifferent to a substantial risk that Humphrey would physically harm Plaintiff or other prisoners in 3-B. There is no such evidence. Instead, the parties agree neither Plaintiff nor any other prisoner had reported to ADC officials that Humphrey posed a threat of physical harm. And, Plaintiff admits he did not complain about unassigned prisoners being in 3-B. In sum, the undisputed evidence is

---

[4] This calls into question Defendants' assertion that Humphrey accidentally slipped into 3-B, one time, when the door was open for chow call.

8

that Humphrey's attack was a surprise to Defendants as well as Plaintiff. The law is clear prison officials cannot be held liable in a § 1983 action for failing to prevent a surprise attack. *See Patterson*, 902 F.3d at 845; *Schoelch v. Mitchell*, 625 F.3d 1041, 1047-48 (8th Cir. 2010); *Tucker*, 276 F.3d at 1001-02; *Curry v. Crist*, 226 F.3d 974, 978 (8th Cir. 2000). Accordingly, I find Defendants are entitled to qualified immunity, and I recommend Plaintiff's request for monetary damages against them in their individual capacities be dismissed with prejudice.

### C.  Injunctive Relief

Finally, the doctrines of sovereign and qualified immunity do not apply to Plaintiff's request for injunctive relief against Defendants in their official capacities. *See Hamner v. Burls*, 937 F.3d 1171, 1176 (8th Cir. 2019) ("qualified immunity does not apply to a claim for injunctive relief"); *Monroe v. Ark. State Univ.,* 495 F.3d 591, 594 (8th Cir. 2007) (the state and state agencies are entitled to sovereign immunity from requests for injunctive relief, while state actors sued in their official capacities are not). However, because Plaintiff has failed to produce evidence demonstrating Defendants violated his constitutional right to be protected from harm, his request for injunctive should also be dismissed with prejudice.

### V.  CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1.  Defendants' Motion for Summary Judgment (Doc. No. 30) be GRANTED, Plaintiff's failure to protect claim against Defendants Beasley, Coleman, Williams, and Suell be DISMISSED with prejudice, and this case be CLOSED.

2.  The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 22nd day of April 2020.

                                                      _____
                                                      JOE J. VOLPE
                                                      UNITED STATES MAGISTRATE JUDGE